**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUSUF IBRAHIM,<br><br>    Plaintiff,<br><br> v.<br><br>AMY EMRICH, *et al.*,<br><br>    Defendants. | Civil Action No. 24-01780 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court on Defendant Amy Emrich's and Derrick Bodtmann's Motion to Dismiss (Motion) (ECF No. 19) the Second Amended Complaint (SAC) (ECF No. 17) for failure to state a claim under Federal Rule of Civil Procedure (Rule) 12(b)(6). *Pro se* Plaintiff Yusuf Ibrahim opposed the Motion. (ECF No. 20.) Defendants filed a reply (ECF No. 22), and Plaintiff submitted a sur-reply (ECF No. 23). The Court carefully reviewed Plaintiff's submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

 **A. The Second Amended Complaint**

  Plaintiff is incarcerated at the New Jersey State Prison ("NJSP") located in Trenton, New Jersey. (*See* ECF No. 17 at 1.) According to Plaintiff, "the prison is in violation of the 1st Amendment's Access to the Courts provision," and "[s]temming from this violation is a 14th

Amendment Due Process violation impeding plaintiff from presenting a complete defense, and 6th Amendment violation of the right to self-representation." (*Id.* at 2.) Plaintiff acknowledges that he does not have a right to an attorney on a second or subsequent petition for post-conviction relief ("PCR") in the state courts or a federal habeas proceeding, and a prisoner without resources to hire an attorney must proceed *pro se*. (*Id.*) Plaintiff allegedly is actively involved in his own defense, has developed a strategy to prove his innocence and challenge his conviction and life sentence, and cannot implement this strategy due the obstructions that the prison has placed on his access to attorneys, and "non-attorney legal professionals," *e.g.*, private investigators and forensic experts, which impedes his access to the courts. (*Id.*)

Plaintiff asserts two claims. In Claim 1, he alleges that "Mr. Ibrahim is being denied the right to confidentially strategize with an attorney, investigator, expert, or legal professional in violation of the 1st, 6th, and 14th Amendments' Access to the Courts, Due Process, and right to self-representation." (*Id.* at 3 (emphasis omitted).) Allegedly, a prisoner, who has drawn up a strategy with an attorney or legal professional on a piece of white paper, is prohibited by Defendants from handing the paper to the lawyer or professional (and, if caught doing so, the attorney or professional would be "treated like a criminal," surrounded by custody staff, and forced to turn over the piece of paper). (*Id.*) Plaintiff cites to a letter from a Rutgers attorney named Nyssa Taylor, Esq., to the Commissioner of the New Jersey Department of Corrections ("NJDOC") describing her alleged experience with this unconstitutional policy while meeting with another prisoner. (*Id.* (citing ECF No. 17-3, Ex. E).) This policy allegedly denies meaningful and confidential communications with attorneys and legal professionals. (*Id.*)

In Claim 2, Plaintiff alleges that he "is being denied the right to add non-attorney legal professionals to his confidential visit/call list." (*Id.* at 4 (emphasis omitted).) He allegedly

2

submitted institutional forms to add a private investigator to his "confidential visit" and "confidential calls" lists; however, Acting NJSP Administrator Emrich denied the requested confidential visit. (*Id.* (citing ECF No. 17-3, Ex. A at A1-A2).) Plaintiff used the Jpay remedy system noting his need for a confidential visit with an investigator based on his *pro se* status, but his submissions were denied by Emrich and Assistant NJSP Administrator Bodtmann. (*Id.* (citing ECF No. 17-3, Ex. B at B1-B4).) Instead, Plaintiff's licensed investigator, "former Law Enforcement Official Jeffrey A. Oster," was allegedly instructed to contact the prison to set up a confidential visit, and, after consulting with Administrative Assistant Charice Hampton, a confidential visit with Plaintiff was permitted. (*Id.* (citing ECF No 17-3, Ex. E.).)

Plaintiff alleges that the investigator's name could not be added to the confidential visit list, the visits were to be approved on a case-by-case basis, and for each visit Plaintiff has to submit a special request and e-mail confirmation is required. (*Id.*) According to Plaintiff, this burdensome process "squanders" the limited time and funds he has available to him, instead of using his time and money for investigative purposes. (*Id.* at 4-5.) After the first visit was approved, believing that the issue was resolved, Plaintiff allegedly requested that Oster's name be added to the confidential visit list using the standard prison form, and Emrich denied the request (and asked Plaintiff to stop making this request). (*Id.* at 5.) Plaintiff contacted Emrich via Jpay, and she clarified that each visit request would be decided on a case-by-case basis. (*Id.* (citing ECF No. 17-3, Ex. B at B4).) Emrich likewise rejected Plaintiff's attempt to add Oster to the confidential call list. (*Id.* (citing ECF No. 17-3, Ex. C at C1).)

According to Plaintiff, as a direct result of the prison administration's abridgement of his right to access to the courts, he was unable to support a claim of newly discovered evidence, and the trial court denied his motion for a new trial. (*Id.* (citing ECF No. 17-3, Ex. G).) Plaintiff states

3

that he "posseses[s] 1) irrefutable scientific evidence in the form of two conflicting ballistic reports both conducted by the State; one of which was *purposely withheld* from the jury; and 2) Exculpatory Statement *without* from trial." (*Id.* at 6 (citing "May 1, 2013 Trace Fiber Analysis Report authored by Sate Forensic Paul M. Verdino, and each page peer reviewed and initiated by Chief Forensic Scientist 'ERH'; *withheld* from jury" and "April 20, 2016 Ballistic Report authored by State Police Lieutenant John Garkowski; *presented* to jury").) "For Mr. Ibrahim to substantiate his claim of actual innocence, an investigation into the integrity of the conviction depends on the reliability of the scientific and witness statements, among other things. This cannot be substantiated without confidential strategizing via telephone/visit." (*Id.*)

Plaintiff names Emrich and Bodtmann as Defendants and claims that they are personally (and jointly and severally) responsible in their individual and supervisory capacities for creating, implementing, or upholding a policy denying equal protection and confidential communications with attorneys and "non-attorney legal professionals." (*Id.* at 6-7.) He brings individual-capacity claims for compensatory and punitive damages and official-capacity claims for injunctive and declaratory relief (*i.e.*, an injunction ordering Defendants to permit Plaintiff to give to his attorney or legal professional confidential and privileged strategies during their confidential visits, to provide "Equal Protection to legal professionals as those given to attorneys," to stop intimidating or treating attorneys or legal professionals like criminals for performing their duties, and to permit non-attorney legal professional to be added to the confidential call and visit lists utilizing the same method for adding attorneys). (*Id.* at 7-8.)

**B.  Procedural History**

On or about October 18, 2023, Plaintiff filed a *pro se* complaint in the Mercer County Superior Court, Docket Number MER-L-002075-23, naming Emrich and Bodtmann as

4

Defendants. (ECF No. 1-3, Ex. A.) The Complaint alleged that Plaintiff was denied access to the courts without citing any federal statutory or constitutional provision. (*Id.*) On February 2, 2024, Plaintiff filed a motion to amend the complaint, which was granted on February 20, 2024. (ECF No. 1-4; ECF No. 1-5 at 6.) The amended complaint ("FAC") alleged "access-to-the-courts" claims under the First and Fourteenth Amendments to the United States Constitution. (*See* ECF No. 1-4.) On March 7, 2024, Defendants filed a notice of removal to this Court asserting federal question jurisdiction under 28 U.S.C. § 1331. (*See* ECF No. 1.)

On August 8, 2024, the Court denied Plaintiff's motion to remand. *Ibrahim v. Emrich*, No. 24-1780, 2024 WL 3728071, at *1-2 (D.N.J. Aug. 8, 2024).

On March 28, 2024, Defendants moved to dismiss Plaintiff's FAC. (ECF No. 7.) Plaintiff filed his opposition on or about May 2, 2024. (ECF No. 8.) Plaintiff attached the following documents to his opposition: (1) copies of disapproved requests to have a contact visit with Oster (ECF No. 8-2, Ex. A ("Contact Visit Requests") at 4-5); (2) JPay grievances and responses regarding in-person and telephone contacts with his private investigator (ECF No. 8-2, Ex. B ("Grievances") at 7-10); (3) a denied telephone system discrepancy and attorney change form asking to add Oster to the confidential call list (ECF No. 8-2, Ex. C ("Telephone Form") at 12); (4) the first page of Haley's letter to the Commissioner of the NJDOC complaining that, during her visit with another prisoner, legal documents were confiscated (ECF No. 8-2, Ex. D ("Haley Letter") at 14); and (5) a letter from Plaintiff's private investigator (Oster) about scheduling a confidential contact visit (ECF No. 8-2, Ex. E ("Private Investigator Letter") at 16).

Defendants filed their reply on May 10, 2024. (ECF No. 9.) On or about June 12, 2024, Plaintiff filed a sur-reply without leave of Court. (ECF No. 10.)

5

On October 17, 2024, the Court granted the motion to dismiss in part and denied it in part ("October 17, 2024 Opinion"). *See Ibrahim v. Emrich*, No. 24-1780, 2024 WL 4511982 (D.N.J. Oct. 17, 2024). The Court dismissed with prejudice the official-capacity claims for damages on the grounds that Defendants are not "persons" liable to suit under 42 U.S.C. § 1983. *Id.* at *4. Furthermore, Plaintiff's request for injunctive relief was dismissed because the FAC did not allege an ongoing constitutional violation. *Id.* at *4-5. The Court additionally dismissed Plaintiff's individual-capacity claims for damages against Defendants for violating his rights to access to the courts because he failed to allege sufficient facts in his FAC plausibly indicating their participation in the allegedly unconstitutional conduct and, even if he had satisfied the participation requirement, Plaintiff did not plausibly allege that the alleged conduct caused actual injury. *Id.* at *5-8. However, the Court dismissed the individual-capacity claims for damages and the official-capacity claims for injunctive relief without prejudice, granting Plaintiff 45 days to file a second amended complaint curing the deficiencies in the FAC identified by this Court. *Id.* at *8-9 (concluding that Defendants fail to meet their burden under the second prong of the qualified immunity defense).

Plaintiff requested an extension of time to file an amended complaint, which was granted. (ECF No. 16.) The SAC was filed on or about January 8, 2025. (ECF No. 17.) Plaintiff attached to the SAC a "Table of Exhibits" (ECF No. 17-2) and the following exhibits: (1) the Contact Visit Requests (ECF No. 17-3, Ex. A); (2) the Grievances (ECF No. 17-3, Ex. B); (3) the Telephone Form (ECF No. 17-3, Ex. C); (4) a complete copy of the Haley Letter (ECF No. 17-3, Ex. D); (4) the Private Investigator Letter (ECF No. 17-3, Ex. E); (5) two forensic repots ("Forensic Reports" (ECF No. 17-3, Ex. F); and (6) the state trial court's order denying his motion for a new trial in Hudson County Ind. No. 14-04-00044-S ("New Trial Denial") (ECF No. 17-3, Ex. G).

6

After being granted an extension of time to answer the SAC (ECF No. 18), Defendants moved to dismiss the SAC on February 3, 2025. (ECF No. 19.) On April 10, 2025, the Court granted Plaintiff's motion to accept his attached brief opposing the Motion as timely. (ECF No. 21.) Defendants filled a reply brief on April 22, 2025 (ECF No. 22), and, on or about May 5, 2025, Plaintiff submitted a sur-reply (ECF No. 23). As the Court noted in its October 17, 2024 Opinion, *see Ibrahim*, 2024 WL 4511982, at *2, Local Civil Rule 7.1(d)(6) states that "[n]o sur-replies are permitted without permission of the Judge to whom the case is assigned." The Court nevertheless considers the sur-reply given Plaintiff's *pro se* status. *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2022 WL 2314836, at *2 n.1 (D.N.J. Jun. 28, 2022) (considering a sur-reply filed by a *pro-se* plaintiff without prior leave of court due to the greater leeway typically afforded to *pro-se* litigants (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011))). Plaintiff, however, is reminded that, "at the end of the day, [*pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Kay v. Bemis*, 500 F.3d 1214, 128 (10th Cir. 2007)).

## II.   LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).

The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)). Because Plaintiff is proceeding *pro se,* the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that courts must remain flexible, especially when dealing with imprisoned *pro se* litigants). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 244-45).

### III. DISCUSSION

Defendants argue that "Plaintiff once again fails to state viable access to the courts claims because he fails to allege that he suffered an actual injury, i.e., the ability to pursue an arguable or non-frivolous claim in his state court criminal proceedings." (ECF No. 19-1 at 1.) Defendants further argue that, even if Plaintiff had stated viable access to courts claims, those claims should be dismissed because Defendants are entitled to qualified immunity, Plaintiff fails to allege Bodtmann's personal involvement in any constitutional violations, and Plaintiff's request for injunctive relief should be dismissed because there are no alleged facts showing an ongoing constitutional harm. (*Id.* at 9-21.) According to Defendants, the claims should be dismissed with prejudice. (*See id.* at 21.)

The Court agrees with Defendants that the SAC fails to remedy the deficiencies identified in the October 17, 2024 Opinion. However, the Court does not agree that the claims should be dismissed *with prejudice.*

### A.     Plaintiff's Request for Injunctive Relief

In its October 17, 2024 Opinion, the Court concluded that the FAC did not allege an ongoing constitutional violation for purposes of Plaintiff's request for injunctive relief. *Ibrahim*, 2024 WL 4511982, at *4-5. "[A] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* (quoting *Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 71 n.10 (1989)).

In his SAC, Plaintiff does not plead any facts indicating a continuing denial of his right to access to the courts. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers"). He baldly alleges that he "cannot implement [his] strategy [to prove his innocence] due to the obstructions the prison has placed on his access to attorneys, and non-attorney legal professionals, thereby impeding his Access to the Courts." (ECF No. 17 at 2 (footnote omitted).) However, mere conclusory allegations must be disregarded. *See Wilson*, 57 F.4th at 150 (stating that courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements" (citing *Oakwood Lab'ys LLC*, 999 F.3d at 903)). Furthermore, Plaintiff does not refer to any ongoing or future legal proceeding which is (or could be) obstructed by the Defendants' ongoing actions. On the contrary, Plaintiff alleges that "[t]he trial Court in which [his claim of newly discovered evidence] was pending denied a motion for a new trial." (*Id.* at 5.) The state trial court

9

denied this motion for a new trial on October 4, 2023. (ECF No. 17-3, Ex. G at G1.) Finally, to the extent that Plaintiff purports to assert new allegations of possible ongoing unconstitutional violations in his opposition brief and sur-reply (*see* ECF No. 20-2 at 3 (stating that the prison "will not" allow him to obtain help from non-confidential legal professionals)), "he cannot amend his pleading in a brief," *Ibrahim*, 2024 WL 4511982, at *5 (citing *Ziemba v. Inicipio Techs., Inc.*, No. 13-3590, 2014 WL 4637006, at *3 (D.N.J. Sept. 16, 2014)), and, in any event, his new assertions must be set aside as mere conclusions.

Accordingly, the Court dismisses Plaintiff's official-capacity request for injunctive relief.

### B. Defendants' Personal Involvement

In its prior ruling, the Court summarized the well-established principles governing individual-capacity claims for damages under § 1983:

> A civil rights plaintiff must establish that the defendant was personally involved in the alleged constitutional violation to support an individual capacity claim for monetary relief. *See Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *See Parkell*, 833 F.3d at 330; *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Therefore, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, officials may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.' " *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his or her subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Allegations of personal involvement "must be made with

10

> appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

*Id.* at *5.

The Court previously concluded that Plaintiff's FAC "does not allege 'with appropriate particularity' facts plausibly suggesting that Defendants are liable under either theory." *Id.* According to Defendants, the SAC does not cure this deficiency as to Bodtmann. (ECF No. 19-1 at 18.) This Court agrees. In the SAC, Plaintiff claims that he used the Jpay remedy system to assert his *pro se* status and his need for a confidential visit with an investigator, "but was denied by [Bodtmann]." (ECF No. 17 at 4 (citing ECF No. 17, Ex. B at B1-B4).) This Court indicated in its October 17, 2024 Opinion that Plaintiff cannot establish Bodtmann's personal involvement based on allegations that the Assistant NJSP Administrator "simply advised [Plaintiff] of the [NJ]DOC's policies and procedures' and administratively closed one of Plaintiff's grievances as duplicative to another pending inquiry." *Ibrahim*, 2024 WL 4511982, at *6 (alterations in original) (citing ECF No. 9 at 3, 7)). "[T]he filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement." *Miller v. Trometter*, No. 11-811, 2012 WL 5933015, at *12 (M.D. Pa. Nov. 27, 2012) (citing *Rode*, 845 F.2d at 1208). Accordingly, the Court dismisses Plaintiff's individual-capacity claims for damages against Bodtmann based on Plaintiff's failure to allege in the operative pleading sufficient facts indicating Bodtmann's participation in the allegedly unconstitutional conduct.

### C.    Actual Injury

Defendants also move to dismiss on the grounds that Plaintiff again fails to plausibly allege the requisite actual injury to establish a viable claim for denial of his rights of access to the courts. (ECF No. 19-1 at 6-8.)

As this Court explained:

11

> Prisoners maintain a "fundamental constitutional right of access to the courts," embodied in the First and Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Convicted prisoners may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement." *Prater v. City of Phila*, 542 F. App'x 135, 136-37 (3d Cir. 2013) (citing *Lewis*, 518 U.S. at 354-55).
>
> There are two general types of access to the courts claims. Forward-looking claims involve official action that "frustrates a plaintiff . . . in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). In a forward-looking claim, "[t]he opportunity has not been lost for all time, however, but only in the short term, and the object of this type of suit is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413 (cleaned up). In backward-looking claims, the official acts "allegedly have caused the loss or inadequate settlement of a meritorious case" or the loss of a particular type of relief. *Id.* at 414.
>
> In both types of cases, however, the plaintiff must identify a "nonfrivolous" or "arguable" underlying claim. *See id.* at 415. Indeed, "the underlying cause of action, whether anticipated or lost, is an element [of an access to the courts claim] that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* This is so because "a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). That is, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). As explained by the Supreme Court, "because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

*Ibrahim*, 2024 WL 4511982, at *6-7.

Plaintiff asserts that the actual injury standard established in *Bounds* and *Lewis* is not applicable to the facts of this case because the two cases involved the adequacy of prison law libraries and legal research materials. (ECF No. 20-2 at 2, 4.) According to Plaintiff, even if the two cases are applicable, they are "superseded by the supremacy clause of the First, Sixth, and 14th Amendments as it concerns access and opportunity to confidentially strategize with attorneys and non-attorney legal professionals without scrutinizing the evidential value of the ever-evolving strategy" and that "[c]ontemplating potential success on the merits or actual injury cannot have any bearing on access to the courts with respect to this very specific Constitutional claim." (*Id.* at 4-5; *see also id.* at 2 (sating that Sixth Amendment grants a *pro se* defendant the right to present his own defense), 5 (arguing that he cannot imagine that his First, Sixth and Fourteenth Amendment rights to access to the courts, self-representation, and due process of the law were to be abridged where there is no issue of institutional safety or security), 6 (further referring to justice and fundamental fairness, equal protection of the laws, and both procedural and substantive due process)).)

However, as the Court indicated in its prior opinion, *Lewis* and *Bounds* provide the applicable framework for evaluating whether Plaintiff has alleged a plausible claim that his constitutional rights were violated. Specifically, although Plaintiff repeatedly refers to the right to counsel under the Sixth Amendment, there is no indication that Plaintiff had legal representation in his underlying state court proceeding. On the contrary, Plaintiff's unsuccessful motion for a new trial was filed *pro se*. (ECF No. 17 at 2; ECF No. 17-3, Ex. G at G1-G2.) Plaintiff also acknowledges that he has "no right to an attorney on a second or subsequent petition for Post-Conviction Relief; or at the Federal Appeals process when submitting a petition for a Writ of Habeas Corpus." (ECF No. 17 at 2); *see also Richardson v. Superintendent Coal Township SCI*,

505 F.3d 750, 760 (3d Cir. 2018) (stating that there is no Sixth Amendment right to counsel in state post-conviction review proceedings).

It is well established that pretrial detainees have a right of access to the courts as to legal assistance and participation in preparing a defense against pending criminal charges and may raise claims alleging interference with their Sixth Amendment rights. *See Prater*, 542 F. App'x at 137-38. In contrast, "[b]ecause [Plaintiff] is a convicted prisoner, his claim is properly analyzed under the First and Fourteenth Amendment as a denial of access to the courts claim rather than a Sixth Amendment denial of counsel claim." *Jones v. Harry*, No. 24-5692, 2024 WL 4940547, at *7 (E.D. Pa. Dec. 2, 2024) (citing *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015)). To state a claim for denial of access to the courts, the plaintiff must allege an actual injury under *Lewis. See id.*

Plaintiff also refers to the Equal Protection Clause of the Fourteenth Amendment, challenging the disparate treatment of attorneys, who are eligible for the confidential call/visit lists, and "non-attorney legal professionals" who are not eligible to be added to the lists. (*See* ECF No. 17 at 8.) In reviewing an equal protection claim, a court must first determine "whether the alleged state action burdens a fundamental constitutional right or targets a suspect class." *State Troopers Non-Commissioned Officers Ass'n of New Jersey v. New Jersey*, 399 F. App'x 752, 754 (3d Cir. 2010) (citing *Doe v. Pa. Bd. of Prob. & Parole*, 5123 F.3d 95, 107 (3d Cir. 2008)). "If a 'classification neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate end.'" *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). However, "a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage . . . must meet the strict scrutiny

standard, under which a law must be narrowly tailored to further a compelling government interest." *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (citation and internal quotation marks omitted). Access to the courts is a fundamental right for purposes of the equal protection analysis. *See Doyle v. Arete Financial Group LLC*, No. 21-19935, 2022 WL 17253587, at *2 (D.N.J. Nov. 28, 2022). Accordingly, the equal protection analysis implicates whether Plaintiff has stated a cognizable claim for denial of his right to access to the courts under *Bounds* and *Lewis*.[1] *Id.*

The Court again concludes that Plaintiff has not satisfied the "actual injury" requirement. Plaintiff baldly claims that, as a result of the abridgement of his rights, he was unable to support his claim of newly discovered evidence, which was denied by the state trial court; he possesses "irrefutable scientific evidence in the form of two conflicting ballistic reports both conducted by the State; one of which was *purposely withheld* form the jury" and "Exculpatory Statement *withheld* from trial;" and Plaintiff cannot substantiate his claim without conducting an investigation into the conviction's integrity based on the reliability of the scientific evidence and witness statements, and such substantiation cannot be done without "confidential strategizing via telephone/visit." (ECF No. 17 at 5-6 (footnote omitted).) However, Plaintiff's conclusory allegations do not "identify a 'nonfrivolous' or arguable claim.'" *Ibrahim*, 2024 WL 4511982, at *7 (quoting *Christopher*, 536 U.S. at 415); *see also Wilson*, 57 F.4th at 140 (sating that unsupported legal conclusions must be disregarded). In fact, the New Trial Denial attached to the

---

[1] If the alleged classification does not burden a fundamental right like the right of access to the courts (or a suspect classification), "a court may uphold state action on any conceivably valid purpose, even when the court itself supplies the hypothetical basis." *Harris v. Williams*, No. 25-3373, 2025 WL 2027649, at *3 (D.N.J. Jul. 21, 2025) (citing *Little v. Terhune*, 200 F. Supp. 2d 445, 452 (D.N.J. 2002)). It is reasonable to distinguish between attorneys, who are officers of the court, and other individuals, such as private investigators, for the limited administrative purpose of assessing whether such attorneys/individuals should be eligible for inclusion on the confidential visit and call lists.

SAC stated that "the interview of Nora Meshal and the forensic report of Paul Verdino, which serve as the factual predicate for the relief sought in this petition are not newly discovered" and that "[t]hese issues were reviewed in [Plaintiff's] Petition for Post-Conviction relief." (ECF No. 17-3, Ex. G at G1.) The SAC does not address (or mention) the reasons why the state trial court denied Plaintiff's motion.

In addition, Plaintiff does not allege facts allowing the Court to "trace" or "tie" the result in the state court proceeding to the conditions of which he complained, *Ibrahim*, 2024 WL 4511982, at *7 (quoting *Diaz*, 532 F. App'x at 67). Plaintiff admits that he was allowed to have a confidential visit with his investigator and that future visits could be approved on a case-by-case basis. (ECF No. 17 at 4-5.) Plaintiff does not explain how the inclusion of the investigator on his visit and call lists, or being permitted to exchange paperwork with the investigator during a contact visit, would have saved his motion to dismiss.

In his opposition brief, Plaintiff argues that the prison cannot be the "gatekeeper" deciding the evidentiary value of his confidential strategic decisions, and there are "extensive points to be drawn out – but the prison forbids the passing of these notes." (ECF No. 20-2 at 2-3.) Plaintiff also contends that he can prove that Meshal's statement was newly discovered (*i.e.*, it was discovered in June 2022 after the trial transcripts and witnesses statements were reviewed and was never produced in discovery) and was exculpatory in nature (Meshal stated that she was approached by hitmen looking for her brother "after the two hitmen initially sent after Mr. Ibrahim failed to complete the task of killing him." (*Id.* (noting that Meshal's interview could be obtained from Plaintiff's sister, Mariam Ibrahim, and providing her email address).) According to Plaintiff, Meshal also provided information in exchange for immunity for her brother, but "[n]one of this came into the defense's possession during trial." (*Id.* at 3-4.) Plaintiff further refers to the value

of having access to an investigator to interview the witness and obtain an affidavit from her, the importance of confidentiality, the necessity of conducting a thorough examination of the records with professional help to prepare a proper motion for a new trial based on newly discovered evidence, and the fact that a *pro se* motion does not carry the same weight a motion supported by professional help. (*Id.* at 4.)

However, as this Court has noted in both the prior October 17, 2024 Opinion, *see Ibrahim*, 2024 WL 4511982, at *8, and in Section III.A., *supra*, the Court is prohibited from considering any new allegations. *See Ziemba*, 2014 WL 4637006, at *3. Even if the Court could consider them, the allegations do not cure the deficiencies in Plaintiff's SAC. Specifically, Plaintiff fails to identify a nonfrivolous or arguable underlying claim because he does not address the state trial court's conclusion that "[t]hese issues were reviewed in your Petition for Post-Conviction relief." (ECF No. 17-3, Ex. G at G1.) Furthermore, Plaintiff does not allege actual facts plausibly tying the denial of the motion for a new trial to either the alleged exclusion of non-legal professionals from the visit and call lists, or an alleged policy prohibiting the passing or use of notes. Finally, Plaintiff's brief "does not present any facts plausibly indicating that he has no other remedy available to him in the state courts." *Ibrahim*, 2024 WL 4511982, at *8 (citing *State v. Szemple*, 252 A.3d 1029, 1035 (N.J. 2021)).[2]

Accordingly, Plaintiff's claims are dismissed because he has failed to allege actual injury.

---

[2] In his sur-reply, Plaintiff contends that the Meshal interview is not the focus of his SAC. (ECF No. 23 at 3.) However, Plaintiff specifically alleges in his SAC the existence of an "Exculpatory Statement *withheld* from trial." (ECF No. 17 at 6.) Plaintiff also contends that the fact that, as a *pro se* defendant, he cannot meet or strategize with an investigator, a forensic expert, or an attorney, "is unconstitutional" and "preposterous." (ECF No. 23 at 3.) Plaintiff acknowledges that he is proceeding *pro se,* and has no constitutional right to counsel, in his state case. (*See id.*). There is also no indication that Plaintiff has retained a forensic expert.

### D. Dismissal With or Without Prejudice and Leave to Amend

Defendants argue that Plaintiff's SAC should be dismissed with prejudice. (ECF No. 19-1 at 21.) As the Court previously observed, *Ibrahim*, 2024 WL 4511982, at *8, Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). The Court cannot conclude at this juncture that it would be futile for Plaintiff to file a third amended complaint curing the deficiencies identified by this Court in his SAC.[3] Accordingly, the Court dismisses the SAC without prejudice and gives Plaintiff one final opportunity to amend his complaint to the extent that he can cure the deficiencies set forth in this Opinion.

---

[3] Defendants contend that Plaintiff does not have a clearly established right to include a private investigator on his confidential contact visit and call lists. (ECF No. 19-1 at 16); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (stating that, to overcome a claim of qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." (citation omitted)). This Court has already rejected a similar argument. *Ibrahim*, 2024 WL 4511982, at *8 ("Defendants assert that it is not clearly established that the right to access to the courts includes communications with a private investigator." (citing ECF No. 7-1 at 15-17)).) The Court again determines that Defendants fail to meet their burden under the second prong of the qualified immunity defense. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (noting qualified immunity is an affirmative defense, and the burden of pleading it rests with the defendant).

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED** in part and **DENIED** in part. The Court **DISMISSES without prejudice** Plaintiff's SAC. Plaintiff may submit a third amended complaint within 45 days if he can cure the deficiencies identified in this Opinion. An appropriate Order will be entered.

DATED: September 29, 2025

*[signature]*
GEORGETTE CASTNER
United States District Judge